UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK MASON,

       Plaintiff,

  v.

VILLAGE OF CAMBRIA, an Illinois
municipal corporation,

       Defendant.

Case No. 06-cv-4013-JPG

## MEMORANDUM AND ORDER

**GILBERT, District Judge**

This matter is before the Court on the Village of Cambria's (Cambria) motion to dismiss (Doc. 9), to which Mark Mason (Mason) has responded (Doc. 16) and Cambria has replied (Doc. 17). Mason moved for an extension of time to file his memorandum in opposition (Doc. 15) and filed it before the Court ruled on his motion. The Court hereby **GRANTS** the motion for extension of time; it will treat the motion as timely filed. For the following reasons, Cambria's motion to dismiss will be **GRANTED**.

## BACKGROUND

The Court draws the following facts from the complaint, which it accepts as true for purposes of this motion. *Pitts v. City of Kankakee*, 267 F.3d 592, 593 (7th Cir. 2001). Mason, a black man, began working as a police officer for Cambria in 1987. He continued working for Cambria until sometime in 1995, when he became ill and took extended sick leave. In July 1998, he spoke to the Commissioner of the Cambria Police, Les Higgins (Higgins), and told him that he was ready to return to work. Higgins told Mason that he did not have any shifts open, but that he could return to active status if he submitted a physician's note clearing him for duty. Mason sent Higgins the requested note on September 11, 1998 with a letter requesting clarification of his

employment status.  After he did not receive a response, Mason mailed a second copy of the letter on October 13, 1998.  Mason did not receive a response to his second letter.  Mason made other similar requests (at times unknown) that also went unanswered.  On December 16, 2004, Mason's attorney sent another letter to Higgins requesting Mason's employment status, which, like the others, went unanswered.

Mason claims Cambria has failed to respond to his inquiries "due to racially based bias or prejudice."  (Doc. 1 at 3).  As support for his belief that Cambria officials are racist, Mason recounts an incident that happened sometime in 1994, where he wrote a speeding ticket to Cambria Village Board member David Brown.  In his unhappiness at receiving the ticket, Brown became abusive and called Mason "boy."  Cambria has not refused to communicate with white employees who took leave.

Mason brings two claims in this action. In Count I, Mason claims Cambria's refusal to communicate with him constitutes disparate treatment race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), (2).  Mason presented this claim to the Equal Employment Opportunity Commission (EEOC) on May 24, 2005.  On October 13, the EEOC issued its right to sue letter.  It found that his claim was untimely and declined to pursue his case.  In Count II, Mason claims Cambria's actions have deprived him of his right to make and enforce contracts, on account of his race, in violation of 42 U.S.C. § 1981.  Cambria contends that both Mason's claims are time-barred and moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **ANALYSIS**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the plaintiff.  *Brown v. Budz*, 398 F.3d 904,

908 (7th Cir. 2005). The Court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff cannot prove his claim under any set of facts consistent with the complaint. *Holman v. Indiana*, 211 F.3d 399, 405 (7th Cir. 2000). "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Brown*, 398 F.3d at 909 (internal quotations omitted).

As the statute of limitations is an affirmative defense, dismissal of a case on that basis, on a motion to dismiss, is normally inappropriate. *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). Nevertheless, a court may do so when "the validity of the defense [is] apparent from the complaint itself, and unmistakable, so that the suit is fairly describable as frivolous." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (internal citations omitted). With this in mind, the Court will proceed to address the parties' arguments.

I.     **Count I**

Title VII forbids employers from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Before an employee can sue under this provision, he must timely file a charge with, and receive a "right to sue letter" from, the EEOC. 42 U.S.C. § 2000e-5(b), (e) and (f); *Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999). A claim is time-barred under Title VII in this state if a plaintiff fails to file a charge with the EEOC within 300 days of the alleged "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1); *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005).

Mason filed his charge with the EEOC on May 24, 2005, which was within 300 days of December 16, 2004, when his attorney sent Cambria the last letter. The question presented here

is whether the 300 days started to run from December 16, 2004, or from some earlier date. Though Cambria is skeptical that a claim for relief for "deliberate and intentional refusal to communicate" exists, to the extent it does, it contends it arose in 1998.

Mason summarizes his position as follows: "The gravaman of the Complaint is that [Cambria] has mysteriously but consistently, on an ongoing basis, refused to answer [Mason's] elementary request to inform him of his employment status." (Doc. 16 at 4). As this statement suggests, Mason believes the key inquiry on the accrual issue is "at what point can it be stated that [Mason] *knew* that he was not being asked to return to work." (Doc. 16 at 2). He posits a violation that started with Higgins's first refusal to respond in September 1998, that has continued to this day – he still does not know, *officially*, whether he is employed by Cambria. Cambria rejects Mason's formulation of the issue; it believes the relevant inquiry is, "whether Mason had reason to believe 300 days before May 24, 2005 . . . that he had not been recalled to work and that Cambria had not communicated with him." (Doc. 17 at 1). As a matter of common sense, Cambria believes Mason knew it was not going to communicate with him in 1998.

The limitations period starts to run when one knows or should have known that he has been injured. *Webb v. Indiana Nat. Bank*, 931 F.2d 434, 436 (7th Cir. 1991). The rule is not ironclad. It does not apply when, for example, "it would be unreasonable to expect the plaintiff to perceive offensive conduct, or when the earlier violation may be recognizable as actionable only in light of later events." *Pitts*, 267 F.3d at 595 (internal quotation marks omitted). Similarly, it does not apply when "each day or week brings a fresh wrong," such as when one subject to wage discrimination receives a paycheck giving him less money than a similarly situated coworker does every week. *Id.* (citing *Bazemore v. Friday*, 478 U.S. 385, 395-96 (1986)).

The Seventh Circuit has addressed the continuing violation doctrine in a number of

contexts. In *Pitts v. City of Kankakee*, the plaintiff challenged the City's placement of a sign captioned, "slum property," which listed his name and address, on certain property. He claimed the City placed this sign, in June 1997, in retaliation for his public opposition to certain City policies. *Pitts*, 267 F.3d at 593-94. The Court rejected his claim that the presence of the sign was a continuing violation and held that his suit, brought November 18, 1999, was time-barred. *Id*. at 595-96. The continued presence of the sign was "merely a lingering effect of an earlier violation." *Id*. The court contrasted the presence of the sign with the continued maintenance of an unconstitutional religious monument in *Gonzales v. N. Township of Lake County*, 800 F.Supp. 676 (N.D. Ind. 1992). In *Gonzales*, the district court found that the plaintiff could challenge the continued maintenance of the monument, despite the fact that the monument had been built 27 years before the suit was filed. What made *Gonzales* different from *Pitt* was that "the claim accrued every day the monument remained on display." *Pitts*, 267 F.3d at 595. In *Pitts*, once the City posted the sign, Pitts knew he had suffered an injury and nothing happened to change the nature of the injury, except a kind of continuing defamation, which the Court rejected. *Id*. at 596.

*Webb v. Indiana National Bank* illustrates this concept's applicability to the current situation more clearly. In *Webb*, the plaintiff, a black woman, alleged that her employer paid her less than similarly situated white employees and refused to promote her in 1986 and 1987 – all actions within the limitations period. 931 F.2d at 435. The district court dismissed her claims as time-barred anyway, because she knew about defendant's discrimination against blacks well outside the limitations period. *Id*. In support of the district court's ruling, the defendant argued that a court should not allow a plaintiff to defeat the statute of limitations by reapplying for a position that a defendant's discrimination had already denied her. *Id*. at 436. The court accepted this argument in principle, but found it only partially applicable to plaintiff's case. It stated the

principle thus:

> A defendant cannot by virtue of its history of discrimination against an employee prevent that employee from complaining about new discriminatory acts. Only if the defendant has made clear that the plaintiff will not receive further consideration is the plaintiff on notice of a permanent exclusion-a freeze, a ceiling on advancement, parallel to a denial of tenure-that starts the statute of limitations running on any future job applications. Or put differently, if it obviously would be futile to make a future application for the job for which he has just been turned down, the plaintiff cannot delay suit and use those futile applications to delay the running of the statutory period indefinitely.

*Id*. at 437. What brings this case within the ambit of the principle argued by the defendant in *Webb* is the futility of Mason's 2004 letter. Though Mason may not have realized that Cambria officials would not communicate with him after they refused to respond to his first letter, their refusal to respond to the second should have. Higgins's second failure to respond would have let a reasonable person know that he would not get an answer or further consideration.

Cambria's continued refusals to respond to Mason's letters and the passage of time should have removed whatever doubt was left in Mason's mind regarding his employment status and Cambria's willingness to communicate with him. That the number of letters Mason sent, and their dates and details, are unknown, does not change the Court's conclusion in this regard. If one supposes that Mason sent no more letters in 1998, then the fact that he did not hear anything by the end of that year would have put him on notice of his "permanent exclusion." The same would be true if one supposes that he sent letters every couple of months in late 1998 and 1999. The repeated failure to respond coupled with the passage of a year or more from his initial request surely would have done the trick as well.

Mason claims that even today, he does not "know" his employment status. It is true, he has received no response from Cambria, but this cannot not defeat the application of the statute of limitations here. After not having heard from his employer for eight years and not having worked

for eleven he either knew or should have known he was out of a job.  If Mason's argument were accepted, he could just as well waited 15 years to have counsel write a letter. Counsel's letter of December 2004, written six years after Mason's initial attempt to reestablish contact, was a futile act.  At best, Cambria's failure to respond to the letter was a refusal to undo a prior discriminatory decision, not a fresh act of discrimination.  *See Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir. 2001).  As such, Mason cannot use Cambria's refusal to bring its previous actions within the limitations period.  *Id.*; *Webb*, 931 F.2d at 437. The Court is as skeptical, if not more so, than Cambria that Title VII provides a claim for the intentional failure to communicate an employee's status.  If it does, there is no doubt that the claim in this case accrued in 1998.  To the extent Mason alleges a violation of Title VII for Cambria's failure to reinstate him, such a claim is barred for the same reasons. The applicability of Cambria's defense is unmistakable.

In his response to Cambria's motion, Mason makes a last-ditch effort to save his claims by attempting to invoke the equitable defense of "unclean hands" to toll the limitations period. Normally, this doctrine forecloses equitable relief on behalf of the plaintiff when he comes to a court with unclean hands; put another way, "equitable relief will be refused if it would give the plaintiff a wrongful gain."  *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002). One of many problems with Mason's argument is that he has failed to show that this equitable doctrine should be, or ever has been, used to defeat the application of the statute of limitations. A more fundamental problem is Mason's attempt to use the very conduct underlying his claim to stop the application of the statute of limitations, which would wholly vitiate it.  As Cambria points out, it did nothing to deceive Mason to lull him into believing there was no reason to file a timely charge.  This argument is without merit.  The Court **GRANTS** Cambria's motion with respect to Count I.

**II.     Count II**

Mason brings his second claim pursuant to 42 U.S.C. § 1981, which "protects the equal rights of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 126 S.Ct. 1246, 1249 (2006) (internal quotation marks omitted).  Under § 1981, the phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 protects those currently under contract and the "the would-be contractor." *McDonald*, 126 S.Ct. at 1250.

When bringing a claim under § 1981, the plaintiff "must initially identify an impaired contractual relationship . . . under which [he] has rights." *Id*. at 1249.  Mason has not identified the contractual relationship Cambria's actions have impaired. The Court assumes his claim centers on his contractual relationship with Cambria, but Mason has not specifically stated so.  In his complaint, Mason alleges that Cambria's failure to notify him of his employment status

> has harmed his prospects for future employment, since [he] faces an unresolvable dilemma whenever he applies for work: If he lists [Cambria] as a "current employer," he could be accused of lying on his application; if he lists [Cambria] as having terminated his employment, it raises questions he cannot answer.

(Doc. 1 at 4).  One might read this allegation as one directed towards Mason's prospects of entering into prospective contracts with would-be employers.  Regardless of which of these two theories Mason is pursuing, his § 1981 claim is barred by the statute of limitations.

The limitations period for Mason's claim is four years. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 381-82 (2004); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004).  As Mason brought the instant action on January 12, 2006, he must base his claim

on Cambria's activities, subject to the exceptions noted above, that took place after January 12, 2002.  For the reasons discussed above, he was on notice of Cambria's illegal conduct in 1998. Whatever Cambria did that kept Mason from asserting or enforcing his contractual rights took place in 1998 and whatever harm this caused was apparent then as well.  His continuing violation argument here fairs no better than it did with respect to his Title VII claim.  His injury has not changed in any meaningful way since 1998 and Cambria's actions bear none of the hallmarks of those cases where courts have found continuing violations.  The same is true with regard to Mason's prospects for other employment.  If his uncertainty about his employment with Cambria really was an encumbrance on his opportunity to procure another job, this should have been obvious well before 2002.  His attempt to invoke the doctrine of unclean hands fails for the same reasons as above.  Accordingly, Cambria's motion to dismiss Count II is **GRANTED**.

## CONCLUSION

Mason's motion for an extension of time (Doc. 15) and Cambria's motion to dismiss (Doc. 9) are **GRANTED.**  Mason's claims in this case are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED: November 28, 2006**

　　　　　　　　　　　　　　　　　　　　　s/ J. Phil Gilbert
　　　　　　　　　　　　　　　　　　　　　J. PHIL GILBERT
　　　　　　　　　　　　　　　　　　　　　DISTRICT JUDGE